# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE WERT, RICHARD KINCAID, and JAMES MYERS, individually and derivatively on behalf of Ditto Holdings, Inc., n/k/a SoVesTech, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> STUART COHN, ZVI FEINER, DAVID ROSENBERG, and AVI FOX, <br><br> Defendants. | Case No. 17 C 219 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lawrence Wert, Richard Kincaid, and James Myers, all shareholders of Ditto Holdings, Inc., sued members of Ditto Holdings' board of directors and its general counsel Stuart Cohn in connection with alleged mismanagement, fraud, and concealment of the company's finances and operations. Plaintiffs allege that they invested additional funds and retained their initial investments in Ditto based on defendants' misrepresentations and omissions regarding the company's financial condition. Plaintiffs also allege defendants knew or should have known that directors Joseph and Avi Fox were engaged in practices that constituted financial mismanagement of Ditto, breach of fiduciary duty, and corporate waste.

Plaintiffs' claims, as set out in their second amended complaint, include the

following. In count 1, Myers claims that the defendants, including Cohn, knowingly made false representations and concealed material facts to induce him to purchase $125,000 worth stock in Ditto on various dates in the first half of 2015. In count 2, a derivative claim brought on behalf of Ditto and its shareholders, plaintiffs allege that defendants committed corporate waste by engaging in unjustified self-dealing transactions to benefit themselves and their relatives at Ditto's expense. In count 3, also a derivative claim (at least in part), plaintiffs allege that the defendants breached their fiduciary duties by various acts of mismanagement, fraud, and self-dealing. In counts 4 and 5, which are brought by all three plaintiffs individually and not on a derivative basis, they allege that defendants made fraudulent misrepresentations and concealed material facts to induce them to purchase or hold (and not sell) their Ditto stock. Count 6 is a negligent misrepresentation claim, brought on an individual basis, that essentially tracks counts 4 and 5. Count 7 is a claim of legal malpractice against Cohn, in which plaintiffs allege that he failed to ensure that the company complied with basic legal obligations like filing tax returns, maintaining appropriate records and board meeting minutes, and so on; failed to ensure that Ditto's securities offerings were timely registered with the SEC; failed to ensure that information provided to investors regarding securities offerings was accurate and complete; failed to report mismanagement and improprieties to the board of directors; and approved, condoned, or negligently failed to discover numerous acts of mismanagement and self-dealing. This claim is pleaded as both an individual claim by the plaintiffs and as a derivative claim. However, when defendants moved to dismiss the claim, arguing among other things that plaintiffs lacked an attorney-client relationship with Cohn and thus could not

2

individually sue him for malpractice, plaintiffs failed to respond and thus effectively conceded the point. See Wert v. Cohn, No. 17 C 219, 2017 WL 3838098, at *9 (N.D. Ill. Sept. 1, 2017). The Court permitted the malpractice claim to proceed only as a derivative claim on behalf of Ditto. See id.

In short, at present, plaintiffs' only direct claims against Cohn are Myers's Rule 10b-5 claim regarding his purchase of Ditto stock and all plaintiffs' fraud and negligent misrepresentation claims regarding Myers's purchase and all defendants' holding of Ditto stock.[1]

The case has proceeded through fact discovery. The Court then referred the case to a magistrate judge for a settlement conference. The magistrate judge held two settlement conferences. Through these conferences, plaintiffs reached a settlement with Cohn, subject to court approval because the settlement involves the derivative claims against Cohn as well as plaintiffs' direct claims against him. The Court preliminarily approved the settlement in September 2018 and directed the sending of notice to shareholders. Plaintiffs have now moved for final approval of the settlement. Objections have been made by two of the defendants, a non-party who is a former Ditto insider, and Ditto's former chief executive officer Paul Simons (also a Ditto shareholder), who the Court permitted to intervene for the purpose of opposing approval of the settlement.

The proposed settlement involves payment of $675,000 by Cohn's malpractice liability insurer, in return for dismissal of the plaintiffs' individual and derivative claims

---

[1] Plaintiffs also appear to contend that their claim for breach of fiduciary duty against Cohn is, at least in part, a direct claim. But their brief does not explain how this is so, and in any event the Court need not address the issue for present purposes.

against Cohn. The settlement agreement does not address how these funds are allocated, and it is reasonable to believe that Cohn's malpractice insurer is indifferent about that so long as all of the claims against Cohn are dismissed. Instead, the proposed allocation has been made, as plaintiffs have put it, "at Plaintiffs' sole discretion." *See* Pls.' Mem. in Support of Mot. for Prelim. Approval of Settlement with Stuart Cohn (dkt. no. 177) at 2. Under plaintiffs' proposal, the individual plaintiffs will receive $525,000, to compensate them for a portion of the attorney's fees and costs they have incurred in prosecuting the lawsuit. (Plaintiffs' attorneys have represented that they have been paid on an ongoing basis and that the funds will go to plaintiffs themselves to partially reimburse them for fees and expenses they have paid.) In addition, Cohn is assigning to plaintiffs any individual claims he might have against Joseph Fox—though plaintiffs have not made an effort to explain what claims Cohn might have against Fox or what they might be worth. The derivative portion of the proposed settlement involves placing $150,000 into the account of a limited liability company (LLC) to be formed by plaintiffs Wert and Kincaid for the purpose of administering Ditto's intellectual property, which plaintiffs say is Ditto's sole remaining asset. The intellectual property consists of an issued patent and three patent applications. The LLC will be operated by an independent manager who will be responsible for ensuring that the patent applications are prosecuted and, subject to court approval, for apportioning to the shareholders any proceeds from any sale or licensing of the intellectual property. The manager will be compensated for his services out of any such proceeds, subject to court approval. If efforts to prosecute the patent applications or to sell or license the intellectual property prove unsuccessful, any

4

remainder of the $150,000 will be distributed to the shareholders in a manner to be approved by the Court. (Wert and Kincaid state that they have been personally funding the prosecution of the patent applications since 2016.)

Objections to the settlement have been asserted by Paul Simons, Avi and Joseph Fox, and David Rosenberg. Rosenberg and the Foxes were high-level insiders at Ditto, and Avi Fox and Rosenberg are (as indicated) defendants in this lawsuit. Their objections are, in large part, based on their contentions that they are owed wages by Ditto and that these obligations should be paid before anything else is paid—a contention for which they offer no supporting authority. These contentions have no plausible bearing on whether the settlement is fair and reasonable, and accordingly the Court overrules them.[2]

The Court granted Simons leave to intervene to oppose the proposed settlement. Simons is Ditto's former chief executive officer as well as a shareholder. In 2014, he sued Ditto Holdings, Ditto Trade, and Joseph Fox for terminating him in retaliation for reporting fraud by Ditto insiders to the Securities and Exchange Commission. *See Simons v. Ditto Trade, Inc.*, No. 14 C 309 (N.D. Ill.). Simons also asserted claims that he had been fraudulently induced to join Ditto and for securities fraud. In 2016, he obtained a default judgment against Ditto totaling about $2.7 million, a significant part of which consists of attorney's fees and expenses. Simon did not assert, either in that lawsuit or otherwise, any sort of a claim against Cohn. To attempt to collect on his judgment, Simons has served the Ditto entities with citations to discover assets.

---

[2] The Foxes also make some points about plaintiffs' proposal for the derivative-claim portion of the settlement. These largely overlap with Simons's objections, which the Court will address later in this decision.

5

Simons objects to the proposed settlement on the following grounds:

- plaintiffs have not provided notice of the proposed settlement to all shareholders;
- plaintiffs do not actually have any individual claims against Ditto;
- any claimed benefit to Ditto from the proposed settlement is illusory;
- the proposed settlement actually benefits only the plaintiffs in the present case; and
- the proposed settlement avoids recovery for Ditto's creditors, specifically Simons himself.

Federal Rule of Civil Procedure 23.1 requires judicial approval of a settlement in a derivative suit. The underlying rationale is that the self-selected investors who brought the suit may not adequately champion the interests of the corporation and their fellow shareholders. *See Robert F. Booth Tr. v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012). In this case, there is an additional concern: because the plaintiffs also have individual claims against the settling defendant, they are inherently conflicted in the sense that they have an incentive to favor their own individual claims over those brought on behalf of the corporation.

In determining whether the approve the settlement of a derivative action, the Court is "required to exercise an informed judgment whether the proposed settlement is fair and reasonable in light of all the relevant factors," *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959, 961 (Del. Ch.1996), and whether it was reached free from collusion and fraud. *See, e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). In determining the fairness of the settlement, the Court must "balance the policy preference for settlement against the need to insure [sic] that the interests of the

class have been fairly represented." *Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1283 (Del. 1989). The Court "exercises a form of business judgment to determine the overall reasonableness of the settlement," giving consideration to the probable validity of the claims, any difficulties in enforcing the claims through the courts, the collectability of a judgment, the delay and expense of litigation, the amount of the settlement as compared with the amount and collectability of a possible judgment, and the views of the parties involved. *Polk v. Good*, 507 A.2d 531, 536 (Del. 1986). The parties advocating the settlement bear the burden of persuading the Court that the settlement is fair and reasonable. *In re Caremark Int'l*, 698 A.2d at 967. *See generally Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 319–20 (N.D. Ill. 1979)s. In this case, because the proposed settlement involves both derivative and direct claims, a key part of the inquiry is whether the allocation of the settlement as between the derivative claims and the plaintiffs' individual claims is fair and reasonable.

The Court next addresses Simons's contentions and the reasonableness of the proposed settlement, including the proposed allocation of the proceeds as between plaintiffs' individual claims and their derivative claims.

**1.** **Notice**

Simons contends that not every shareholder received notice of the proposed settlement. Plaintiffs have persuasively shown that they provided the best notice reasonably practicable under the circumstances. Ditto ceased doing business, for all practical purposes, over three years ago. Plaintiffs worked with available information and put together a mailing list that, though perhaps not one hundred percent complete, was as good as one could reasonably expect.

7

## 2. Existence of individual claims

Some of the claims plaintiffs have asserted against Cohn, including their legal malpractice claim, are derivative claims. But there is no question that plaintiffs have asserted facially viable individual claims against Cohn. In particular, Myers contend that Cohn made misrepresentations and material omissions to induce him to purchase Ditto stock, and all three plaintiffs contend that Cohn made misrepresentations or material omissions to induce them not to sell their stock. The former states a viable claim under the federal securities laws, and the latter claims are viable claims under Illinois law. These claims survived defendants' motion to dismiss for failure to state a claim. They are not derivative claims, as they are based on wrongs allegedly inflicted upon them by Cohn directly, rather than on Ditto Holdings.

## 3. Use of Cohn's malpractice insurance to settle plaintiffs' claims

Simons contends that that Cohn's malpractice insurance policy is an asset of Ditto from which plaintiffs cannot appropriately recover for their individual claims. The premise is not quite right. The policy is an asset belonging to Cohn, not to Ditto. It is available to satisfy claims that Ditto might make against Cohn, but that does not mean that it is a corporate asset. For example, Simons's judgment—which is against Ditto, not Cohn—would not entitle him to levy on Cohn's policy. The same is true of Simons's citation lien: absent the present lawsuit, the lien would not come anywhere near attaching to Cohn's malpractice insurance. Rather, the insurance proceeds are available to Ditto only because plaintiffs have asserted on Ditto's behalf a derivative malpractice claim against Cohn that his insurer is desirous of settling. But it is equally true that the insurer was, and is, obligated to defend Cohn on *all* of plaintiffs' claims

8

against him, including plaintiffs' individual claims. *See U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991); *Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187, 194, 355 N.E.2d 24, 28 (1976). And it is not at all surprising—and indeed is a matter of commonplace—that in settling the malpractice claim for which it has a duty to indemnify Cohn, the insurer was willing to, and indeed likely was insistent upon, settling *all* of the claims against him, including the individual claims for fraud and negligent misrepresentation. Given this background, there is nothing in the least bit improper about allocating some of the settlement proceeds to plaintiffs' individual claims rather than requiring the entirety to be allocated to the derivative malpractice claim.

**3.    Reasonableness of settlement**

Although the Court has concluded that there is nothing inherently inappropriate about using at least part of Cohn's malpractice insurance coverage to settle plaintiffs' individual claims, the devil, as usual, is in the details. The key issue addressed by the parties is not the overall fairness of the amount to be paid—neither Simons nor anyone else contends it is not enough—but rather how it should be allocated. Simons's remaining objections all concern this point, to which the Court now turns.

Plaintiffs' submissions have a basic deficiency: they include no assessment of the relative merits of plaintiffs' individual claims and their derivative claims. Were plaintiffs proposing a settlement of only derivative claims, that might be less important. But that is not what is on the table: plaintiffs are proposing to allocate the lion's share of the settlement payment to their individual claims, specifically to repay themselves for a significant portion of the attorney's fees they have incurred. They do not contend in

9

their present submissions that any part of the $525,000 is allocable to the derivative claims. *See, e.g.*, Pls.' Resp. to Paul Simons' Obj. to Proposed Settlement with Stuart Cohn at 10 (referring to the $525,000 as the "individual component of the Settlement Agreement").

In short, the proposed allocation of the settlement is seventy-eight percent to plaintiffs' individual claims and twenty-two percent to the derivative claims. This suggests an implicit contention that the individual claims are stronger on the merits, or that the damages arising from them exceed those recoverable on the derivative claims, some combination of the two, or perhaps other factors. But plaintiffs do not address this at all in their submissions to the Court. All the Court is left with is the assumption the most obvious explanation is the right one: plaintiffs have sunk a lot of money into prosecuting this lawsuit and would like to get as much of it back as possible. But that is hardly a basis for a finding that the proposed allocation is reasonable.

Plaintiffs' failure to justify their proposed allocation is sufficient by itself to reject the settlement as proposed. But because Simons has made other arguments, the Court will address them to ensure a complete record.

On the question of allocation, Simons's position, apparently, is that the entirety of the settlement proceeds should be allocated to the derivative claims and paid to Ditto. It is important to note that Simons is hardly a disinterested party and certainly does not stand in the position of an ordinary shareholder. Indeed, Simons likely would not dispute the fact that he is in this for himself, not to protect Ditto's shareholders. Besides being a shareholder, he is a corporate creditor, and one with a liquidated claim and a lien, specifically the lien that exists by virtue of his service of citations to discover assets

10

following entry of the judgment in his favor. See 735 ILCS 5/2-1402(m)(1). If the entirety of the proposed settlement were allocated to the derivative claims and paid to Ditto, Simons likely would take the position that he is entitled to all of it. And indeed he likely would be entitled to a good portion of the proceeds, but certainly not all of them. Were the settlement allocated entirely to the derivative claims, the plaintiffs in the present case would be entitled to petition this Court to recover reasonable attorney's fees and expenses on a common fund basis. See, e.g., Bailey v. Meister Brau, Inc., 535 F.2d 982, 995 (7th Cir. 1976); Swanson v. Am. Consumer Indus., Inc., 517 F.2d 555, 560 (7th Cir. 1975); Swanson v. Am. Consumer Indus., Inc., 475 F.2d 516, 521 (7th Cir. 1973) (citing Mills v. Elec. Auto-Lite Co., 396 U.S. 375 389-97 (1970)). But after deduction of these amounts, Simons would most likely get the rest given his lien.[3]

For this reason, Simons's contention that the proposed settlement does not benefit Ditto or its shareholders rings a bit hollow: his real objection is that the settlement does not benefit *him*. That said, it is only fair to note that as a creditor of Ditto, and one with a judgment and a lien at that, he stands in line in front of the company's other shareholders.

This does not mean that Simons's contention that plaintiffs' proposal benefits only plaintiffs themselves (via payment of $525,000) has merit. Plaintiffs contend, and Simons does not dispute, that the only remaining asset of Ditto that has any potential value is its intellectual property. Plaintiffs' settlement proposal, in part, seeks to try to

---

[3] The Court does not intend by this to adjudicate Rosenberg's or the Foxes' wage claims, but as noted earlier they have provided no support at all for the proposition that insider wage claims have priority over the claims of other creditors or specifically over Simons's judgment lien.

11

realize some value out of the intellectual property—specifically, by allocating money to prosecute the pending patent applications—and thus benefit Ditto and its creditors and shareholders (not just Simons). But there is, as Simons points out, a basic problem with plaintiffs' proposal. Although plaintiffs propose establishing a separate entity to prosecute the patent applications, they have not described how Ditto's rights to the patent and the patent applications would be acquired by that entity.[4] The Court doubts that it has the legal authority to take property from Ditto as part of a settlement between plaintiffs and Cohn—even if the settlement partly involves derivative claims—and plaintiffs have offered no caselaw suggesting that the Court has such authority. This is where plaintiffs' proposal founders. Given the absence of a viable (or even a proposed) mechanism for the hypothetical new entity to obtain Ditto's intellectual property, any benefit to Ditto and its creditors and shareholders from plaintiffs' proposal is, in fact, illusory.

4. **Summary**

For the reasons described above, the Court declines to approve the settlement proposed by plaintiffs. To be clear, the Court is not disapproving the overall amount of the proposed settlement, which likely is justifiable given the uncertainties of litigation and the difficulty of proving plaintiffs' claims. Rather, what the Court is disapproving is plaintiffs' proposed allocation of the settlement proceeds. Under the current proposal, too much is allocated to plaintiffs' individual claims without justification, and the proposal for settlement of the derivative claims lacks a viable mechanism for carrying out the

---

[4] The Court also notes that at the hearing on plaintiffs' motion to approve the proposed settlement, there was some indication that there might be other claims to the intellectual property, meaning that any attempt to transfer it might be contested.

12

proposal's goal of realizing value from Ditto's intellectual property. Other approaches are possible—such as allocating all or the lion's share to the derivative claims and allowing plaintiffs to petition for a common-fund fee and expense award out of the settlement proceeds, leaving the remainder for Ditto and its creditors. And plaintiffs might, in cooperation with Simon (whose lien cannot simply be ignored) and in conjunction with a different allocation, be able to come up with a viable mechanism for realizing value from Ditto's intellectual property. One way or another, the Court encourages plaintiffs and Simons to promptly engage in discussions to try to come up with a mutually acceptable proposal.

**Conclusion**

The Court declines to approve the proposed settlement of the claims against defendant Stuart Cohn for the reasons described above. The case is set for a status hearing on January 7, 2019 at 9:30 a.m. to discuss a schedule for further proceedings.

Date: December 31, 2018

                                                                              _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge